{¶ 45} I must respectfully dissent from the conclusions of the majority. The evidence in this case demonstrates that Appellant was involved in taking cars from several car dealers, all within a few hours of each other; that each was abandoned with the keys left inside; and, that each vehicle was quickly recovered. This is a classic case of joy-riding which constitutes only the offense of unauthorized use of a vehicle, R.C. 2913.03(A), a misdemeanor of the first degree.
 {¶ 46} I agree with Appellant that the State failed to prove apurpose to deprive the owner of the property as required by the theft statute.
 (C) "Deprive" means to do any of the following:
 (1) Withhold property of another permanently, or for a period that appropriates a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration;
 (2) Dispose of property so as to make it unlikely that the owner will recover it;
 (3) Accept, use, or appropriate money, property, or services, with purpose not to give proper consideration in return for the money, property, or services, and without reasonable justification or excuse for not giving proper consideration.
R.C. 2913.01(C).
 {¶ 47} It is obvious that Appellant did not "withhold property of another permanently, or for a period that appropriates a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other *Page 27 
consideration." R.C. 2913.01(C)(1). The cars were recovered quickly, with no apparent damage, and there was no demand for a reward.
 {¶ 48} It also is obvious that Appellant did not "dispose of property so as to make it unlikely that the owner will recover it." R.C. 2913.01(C)(2). The cars were not concealed and were left where it was likely they would be recovered quickly.
 {¶ 49} Finally, it is obvious that the property was not "appropriated." As that term is generally used, it would be synonymous with conversion (converting to one's own use).
 {¶ 50} In fact, all of the State's evidence tended to disprove apurpose to deprive the owner of property. The other individual with Appellant during these incidents provided her driver's license from which the dealers were able to quickly indentify her, obtain her phone number, and speak with her husband. Appellant made no effort to conceal his involvement and his appearance was rather unique, which allowed easy identification of him. As stated above, all these events took place rather quickly, within a few hours, and each vehicle was recovered quickly. In one instance, at the Byers dealership, a black Firebird from another dealership was found nearby, apparently abandoned by Rawlins and Sidders when they gained possession of Byers' Acura TL, which again is consistent with joy-riding, not theft. *Page 28 
 {¶ 51} The majority lists facts which they suggest a jury could accept as circumstantial evidence of an intent (purpose) to deprive the dealerships of property. They note the removal of the dealership sticker from the Firebird, personal belonging left in the Firebird, the Acura was in a back part of a parking lot, the Acura's dealership tag was thrown in the trunk, the dealership tag was removed from the Pontiac G6, and personal belongings were found in the G6. However, we must first remember that Appellant is only charged with theft of the Pontiac G6. Secondly, Appellant and Rawlins consistently removed tags from the vehicles, left personal property in them, and abandoned them. This consistency is contrary to an intent (purpose) to deprive the owner permanently of the property. After all, does the majority believe that Rawlins and Appellant intended to recover and keep all of the various vehicles? Given the cumulative evidence it presented, the State actually disproved its own case.
 {¶ 52} Further, the majority seems to imply that the burden of proof was on Appellant to disprove an intent to deprive the owner of property. The majority states that ". . . abandonment of the vehicle alone was not a sufficient basis for a rational trier of fact to determine that Sidders did not intend to permanently deprive the owners of their property." They also suggest evidence that Sidders might have, but did not offer, again implying that he had the burden. *Page 29 
 {¶ 53} I also agree with Appellant that the additional instruction on conspiracy was reversible error. Appellant was indicted under the theft statute, R.C. 2913.02(A)(2). However, conspiracy is a totally different offense, is defined in R.C. 2923.01, and prohibits the planning, aiding in the planning, or facilitating the commission of any of certain specified offenses. Theft of a motor vehicle is not among the specified offenses. To include an instruction on an offense that is neither charged nor applicable to the facts of the case is error, and in my view, it can not be considered to be harmless.
 {¶ 54} Finally, I would agree with Appellant that counsel's failure to recognize that the wrong offense was charged and counsel's failure to object to an instruction on conspiracy deprived Appellant of competent representation.
 {¶ 55} Accordingly, I would sustain all of Appellant's assignments of error. *Page 1